ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **LONGBRIDGE FINANCIAL, LLC.**<br><br>Recurrido<br><br>v.<br><br>**SUCESIÓN HÉCTOR MANUEL FERNÁNDEZ SOTO y otros**<br><br>Peticionario | KLCE202400899 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.: **CG2020CV00634**<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de diciembre de 2024.

Comparece ante nos, la señora Ana Paula Fernández Borges, sin someterse a la jurisdicción de este Tribunal (Ana Paula o señora Fernández Borges) y solicita que revisemos la *Orden de Ejecución de Sentencia* emitida el 24 de junio de 2024, así como el *Mandamiento de Ejecución de Sentencia* emitido el 27 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Mediante estas, el TPI ordenó la venta en pública subasta de la propiedad objeto de controversia.

Por las razones que expondremos a continuación, se expide el auto de *certiorari* y se revocan las órdenes impugnadas.

**I.**

Según surge del expediente, el 24 de febrero de 2020, Reverse Mortgage Funding LLC (Reverse Mortgage Funding) presentó una *Demanda* sobre ejecución de hipoteca en contra del señor Héctor Manuel Fernández Soto, la Sucesión Neida Priscilla Borges Rivera, los Estados Unidos de América, el Centro de Recaudación de Ingresos Municipales, John Doe y Jane Doe (recurridos) como

posibles herederos de la sucesión. Solicitaban la ejecución de la hipoteca y venta en pública subasta de la propiedad sita en el Barrio Bairoa, en el Municipio de Caguas por incumplimiento con los términos y condiciones de la hipoteca revertida ("reverse mortgage") que sujeta dicha propiedad.

Los Estados Unidos de América, el Centro de Recaudación de Ingresos Municipales, Héctor Manuel Fernández Soto y Héctor Enrique Fernández Borges fueron emplazados personalmente.[1] El emplazador, Alberto A. Segarra Cordero, presentó una *Declaración Jurada* el 7 de octubre de 2021 en la cual declaró las múltiples diligencias realizadas para localizar a los demandados. Explicó que pudo emplazar al señor Héctor Manuel Fernández Soto personalmente, a quien preguntó si tenía hijos en común con la difunta Neida Priscilla Borges Rivera, a lo que le respondió que tenían cuatro hijos. Añadió que el 6 de octubre de 2021, recibió una llamada del señor Héctor Enrique Fernández Borges, hijo del señor Héctor Manuel Fernández Soto, quien le comunicó los nombres de los demás posibles herederos: Ana Paula, Priscilla y Sthefanie, todas de apellido Fernández Borges y que dos de ellas residen en España y la otra en Estados Unidos.

Reverse Mortgage advino en conocimiento de otros nombres de los miembros de la Sucesión Neida Priscilla Borges Rivera, por lo que solicitó enmendar la demanda para incluir a Héctor Enrique[2], Ana Paula, Priscilla y Sthefanie. Junto a la enmienda, solicitó emplazar por edictos a Ana Paula, Priscilla y a Stefanie, por estas residir fuera de Puerto Rico. El 22 de noviembre de 2021, el TPI

---

[1] Héctor Enrique Fernández Borges fue emplazado a través de un emplazamiento dirigido a John Doe como posible miembro desconocido de la Sucesión Neida Priscilla Borges Rivera el 7 de octubre de 2021. Los Estados Unidos de América y el Centro de Recaudación de Ingresos Municipales fueron emplazados el 15 de septiembre de 2021. El señor Héctor Manuel Fernández Soto fue emplazado el 23 de septiembre de 2021.

[2] El 24 de abril de 2023, el foro primario emitió una *Sentencia Parcial* en la cual desestimó las alegaciones contenidas en la demanda relacionadas a Héctor Enrique Fernández Borges, por este haber repudiado la herencia de Héctor Manuel Fernández Soto, quien falleció luego de la presentación de la demanda.

autorizó y expidió el emplazamiento por edicto dirigido a Ana Paula Fernández Borges, Priscilla Fernández Borges, Stefanie Fernández Borges, John Doe y Jane Doe como posibles miembros desconocidos de la sucesión.

El 27 de febrero de 2023, Reverse Mortgage presentó una *Moción Solicitando Autorización para presentar Segunda Demanda Enmendada y Emplazamientos Adicionales*. Expuso que al fallecer el señor Héctor Manuel Fernández Soto, se debían incluir a Patricia Fernández, Ana Paula, Priscilla, Sthefanie como posibles miembros desconocidos de la Sucesión Héctor Manuel Fernández Soto y que se debía expedir un emplazamiento dirigido a Patricia Fernández, John Roe y Jane Doe. El 8 de marzo de 2023, el foro primario ordenó la expedición de los emplazamientos.[3]

El 31 de marzo de 2023, el Centro de Mediación de Conflictos (CMC) compareció y presentó una *Moción Informativa sobre la Conclusión del Proceso de Mediación Atendido Mediante el Servicio de Videoconferencia*. Surge de la moción que las partes fueron referidas por el Tribunal para el proceso de mediación. El CMC concluyó lo siguiente:

1. Surge de la reunión que esta propiedad se encuentra desocupada y ninguno de los miembros de las sucesiones viven en la propiedad.

2. De conformidad con la opinión del 3 de junio de 2022, en el caso Franklin Credit Management Corp. v. Linda George Riviello, 2022 TSPR 70, el Tribunal Supremo de Puerto Rico concluyó que el mecanismo de mediación compulsoria establecido en la Ley Núm. 184-2012, supra, solo aplica cuando la propiedad por ejecutar constituye una residencia o vivienda principal, según definido en la ley.

Luego de varios incidentes procesales relacionados al emplazamiento, y a solicitud de Reverse Mortgage, el TPI autorizó la sustitución de Reverse Mortgage Funding, como parte demandante

---

[3] El 8 de abril de 2023, los emplazamientos solicitados fueron expedidos. Al no poder diligenciar los emplazamientos personalmente, el 10 de julio de 2023, el TPI ordenó el emplazamiento por edicto de Patricia Fernández.

a Longbridge Financial, LLC (Longbridge Financial), por ser los tenedores del pagaré garantizado por la hipoteca objeto de ejecución en el caso. Posteriormente, Longbridge Financial solicitó al foro primario que dictara sentencia a su favor. Lo anterior, pues informaron que fueron infructuosas las múltiples gestiones de cobro realizadas para lograr que los recurridos pagaran los cánones vencidos y que el término para presentar las alegaciones responsivas había expirado.

En consecuencia, el 8 de septiembre de 2023, el TPI emitió una *Sentencia*, mediante la cual declaró con lugar la *Demanda* de epígrafe, y ordenó a la Sucesión Héctor Manuel Fernández Soto y a la Sucesión Neida Priscila Borges Rivera al pago, mediante la venta en pública subasta de la propiedad de las siguientes cantidades:

1. $130,074.18 por concepto del principal
2. $81,135.30 en intereses acumulados al 25 de agosto de 2023 y los cuales continúan acumulándose a razón de 5.060% anual hasta su total y completo pago.
3. $23,643.40 en seguro hipotecario
4. $14,537.44 de seguro
5. $600.00 de tasaciones
6. $1,035.00 de inspecciones
7. $2,463.00 de mantenimiento
8. $5,028.90 en adelantos de honorarios de abogado
9. 10% del pagaré original de la suma de $27,000.00 para gastos, costas y honorarios de abogado.[4]

El 7 de noviembre de 2023, Ana Paula presentó, sin someterse a la jurisdicción del TPI, una *Moción Asumiendo Representación Legal en Solicitud de Reconsideración*. Suplicó al foro primario, entre otras cosas, que declarara nula *ab initio* la *Sentencia*, toda vez que el Tribunal no había adquirido jurisdicción sobre su persona debido a que nunca fue emplazada personal ni judicialmente conforme a derecho.

---

[4] También ordenó la ejecución de la hipoteca del inmueble, constituida el 23 de marzo de 2013, mediante la venta en pública subasta, para con su producto satisfacer, hasta donde alcance, el pago de las cantidades adeudadas.

El 24 de enero de 2024, el foro primario emitió una *Resolución* en la cual denegó la moción de reconsideración presentada por la Ana Paula. Por la anterior determinación, acudió ante este Tribunal de Apelaciones en el recurso KLAN202400169, alegando que no fue emplazada personalmente ni por edicto, y que tampoco se le había anotado la rebeldía, por lo que la *Sentencia* del TPI del 8 de septiembre de 2023, era nula. El 5 de marzo de 2024, emitimos una *Sentencia* a los efectos de desestimar el recurso presentado, por falta de jurisdicción ante su presentación prematura. Ello, puesto que la *Sentencia* emitida por el TPI el 8 de septiembre de 2023, no fue notificada por edicto de conformidad a la Regla 65.3 de Procedimiento Civil, *supra.*

De conformidad con lo anterior, Longbridge Financial solicitó al TPI en dos ocasiones que se expidiera la notificación por edicto de la aludida sentencia, por lo que el foro primario ordenó la expedición el 7 de mayo de 2024. La sentencia fue notificada por edicto el mismo día.[5] No obstante, el 16 de mayo de 2024, Longbridge Financial notificó al Tribunal que por error o inadvertencia, algunos nombres no fueron incluidos en la notificación. Por consiguiente, se expidió una nueva notificación de sentencia por edicto el 17 de mayo de 2024.

El 24 de junio de 2024, el foro primario, a solicitud de Longbridge Financial, emitió una *Orden de Ejecución de Sentencia* en la cual ordenó la venta en pública subasta de la propiedad en controversia. Asimismo, el 27 de junio de 2024, el foro primario emitió el *Mandamiento de Ejecución de Sentencia.*

---

[5] El 8 de mayo de 2024, la señora Fernández Borges presentó una *Moción Informando Presentación de Recurso* en el cual informó que fue presentado un recurso de *certiorari* ante el Tribunal Supremo solicitando la revisión y revocación de los dictámenes con relación al caso. El 7 de junio de 2024, el Tribunal Supremo declaró No Ha Lugar el recurso de *Certiorari* presentado. La señora Fernández Borges solicitó la reconsideración y ésta fue declarada No Ha Lugar el 19 de julio de 2024. Todavía inconforme, solicitó una segunda reconsideración y también fue declarada No Ha Lugar el 4 de octubre de 2024.

En desacuerdo con la decisión del TPI, el 29 de junio de 2024, Ana Paula presentó una *Moción de Reconsideración y Nulidad de Sentencia*, pero esta fue declarada No Ha Lugar mediante *Orden* notificada el 15 de julio de 2024.

Aun inconforme con la determinación del foro primario, Ana Paula acude ante este Tribunal de Apelaciones y alega que el TPI cometió los siguientes errores:

> Erró y abusó de su discreción el foro de instancia al emitir Orden y Mandamiento de Ejecución de su Sentencia del 8 de septiembre de [2023] y al avalar la notificación de dicha sentencia por edictos a la parte recurrente conforme a la Regla 65.3 (C) de las de Procedimiento Civil, supra, cuando el foro de instancia nunca declaró rebelde a la parte recurrente.

> Erró y abusó de su discreción el foro de instancia al emitir Orden y Mandamiento de Ejecución de su Sentencia del 8 de septiembre de [2023], pese a la nulidad radical de la misma porque es un hecho fácilmente constatable, corroborable que la parte recurrente nunca fue emplazada en cuanto a la Segunda Demanda Enmendada de este caso y tampoco fue emplazada respecto a la Demanda original del caso de epígrafe. Abona a dicha nulidad la falta de ofrecimiento de todas las alternativas de mitigación de pérdidas en contravención de la Ley 184-2012 de naturaleza jurisdiccional, de RESPA y de la Ley Núm. 169-2016.

> Erró y Abusó de su discreción el foro de instancia al emitir Orden y Mandamiento de Ejecución de su Sentencia del 8 de septiembre de [2023], pese a que la parte recurrida incumplió con las disposiciones del ordenamiento jurídico sobre hipotecas revertidas ("Reverse Mortgage") y con la sección 2-3006 de la Ley de Transacciones Comerciales.

El 30 de agosto de 2024 emitimos una *Resolución* concediéndole un término de 10 días a la parte recurrida, Longbridge Financial LLC., para que fijara su posición sobre el recurso. El 10 de septiembre de 2024, Longbridge Financial presentó una *Moción Solicitando Prórroga* en la cual notificó que las partes se encontraban en conversaciones por lo que solicitó una prórroga de 30 días para presentar su recurso de oposición. La prórroga fue concedida el 18 de septiembre de 2024. Transcurrido

el término, Longbridge Financial no se expresó, por lo que procedemos a resolver sin el beneficio de su comparecencia.

**II.**

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019). Las resoluciones u órdenes *postsentencia* no están comprendidas de forma expresa bajo ninguno de los incisos de la mencionada Regla. Este tipo de recurso debe evaluarse bajo los parámetros establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones para la expedición de un *certiorari.* 4 LPRA Ap. XXII-B, R. 40. Véase, *IG Builders et al. v. BBVAPR,* 185 DPR 307, 339 (2012).

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023*); León v. Rest. El Tropical,* 154 DPR 249 (2001). Su expedición está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró,* 165 DPR 324, 334-335 (2005).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019). A esos efectos, dicha Regla dispone —en lo concerniente— lo siguiente:

El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro). Regla 52.1 de Procedimiento Civil, supra.

Por otro lado, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

En Puerto Rico existe el principio de la libertad de contratación. El Artículo 1206 del Código Civil de Puerto Rico de 1930[6], 31 LPRA sec. 3371, sobre la existencia del contrato, dispone que: "[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio." Es de conocimiento que su perfeccionamiento se da por el mero consentimiento y desde ahí las partes están obligadas al cumplimiento de lo expresamente pactado y a todas sus consecuencias, siempre que éstas sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil de Puerto Rico, 31 LPRA. sec. 3375.

Un contrato es válido cuando convergen los siguientes tres (3) criterios; 1) consentimiento de los contratantes; 2) objeto cierto que sea materia del contrato, y 3) causa de la obligación que se establezca. Artículo 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391. Cuando un convenio contiene los antepuestos elementos, el mismo es obligatorio y aplicará el principio contractual de *pacta*

---

[6] Los hechos del caso de autos surgen durante la vigencia del Código Civil anterior.

*sunt servanda.* Es decir, que el acuerdo constituirá la ley entre las partes. Por consiguiente, los contratos surten efecto solo entre las partes que lo otorgan. Artículos 1044, 1209 y 1230 del Código Civil de Puerto Rico, 31 LPRA secs. 2994, 3374 y 3451.

Las partes contratantes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Artículo 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372. El consentimiento se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato. Artículo 1214 del Código Civil de Puerto Rico, 31 LPRA sec. 3401. No obstante, cuando el consentimiento se presta por error, violencia, intimidación o dolo, es decir, cuando está viciado porque afectó el conocimiento o la libertad del contratante, el contrato es anulable y aquél que sufrió el vicio está legitimado para impugnarlo. Artículo 1217 del Código Civil de Puerto Rico, 31 LPRA sec. 3404.

Conforme al Art. 1042 del Código Civil de Puerto Rico de 1930,[1] 31 LPRA sec. 2992, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitas o en que intervenga cualquier género de culpa o negligencia". Nuestro derecho de obligaciones preceptúa el principio de la libertad en la contratación. Conforme a este, las partes contratantes podrán establecer los pactos, cláusulas y condiciones que estimen por convenientes, siempre que estas no sean contrarias a las leyes, la moral y al orden público. Art. 1207 del Código Civil, *supra*, 31 LPRA sec. 3272. Para que antedicha relación contractual exista se requiere la concurrencia de los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y; (3) causa de la obligación que se establezca. Art. 1213 del Código Civil, *supra*, 31 LPRA sec. 3391. Una vez perfeccionado el contrato por la concurrencia de los requisitos

mencionados, las partes quedan obligadas no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, *supra*, 31 LPRA sec. 3375.

En cuanto al incumplimiento contractual, definido como "el quebrantamiento de un deber que surge de un contrato expreso o implícito", de este producir daños a una de las partes contratantes, surge una causa de acción. *Sociedad Legal de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998). El Art. 1054 del Código Civil, *supra*, 31 LPRA sec. 3018, recalca que "[q]uedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia, morosidad, y los que de cualquier modo contravinieren a tenor de aquellas". Si el incumplimiento de lo pactado es imputable a una de las partes, por esta haber obrado voluntariamente y con pleno conocimiento de su quebrantamiento, tal conducta constituye dolo contractual. Véase, *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 DPR 712 (1992). Consecuentemente, "[e]n caso de dolo responderá el deudor de todos los daños que conocidamente se derivan de la falta de cumplimiento de la obligación". Art. 1060 del Código Civil, *supra*, 31 LPRA sec. 3024.

### III.

En su último señalamiento de error, la señora Fernández Borges solicita que dejemos sin efecto la *Sentencia* emitida el 8 de septiembre de 2024, así como la *Orden de Ejecución de Sentencia* y el *Mandamiento de Ejecución de Sentencia* pronunciados por el foro primario el 24 y 27 de junio de 2024, respectivamente. Lo anterior, toda vez que Reverse Mortgage Financial, ahora Longbridge Financial, incumplió con las disposiciones del ordenamiento jurídico sobre hipotecas revertidas ("reverse mortgage"), y con la sección 2-3026 de la Ley de Transacciones Comerciales. En específico, aduce

que la hipoteca revertida vence cuando: (1) el prestatario fallece, (2) en el caso de una pareja casada, cuando el último prestatario sobreviviente fallece, o (3) cuando la propiedad hipotecada deja de ser la residencia principal del prestatario. Además, argumenta que, para acelerar la deuda, el acreedor debía contar con previa aprobación del U.S. Department of Housing and Urban Development (HUD) para así poder declarar que el préstamo estaba vencido y era exigible, lo cual en este caso no se cumplió. Expone que la referida aprobación del HUD es un requisito *sine qua non*, y que, al Reverse Mortgage Financial no cumplirlo, no procedía que solicitara el pago de la hipoteca revertida por medio de la demanda de referencia, tal cual como lo hicieron en el 2019.

Luego de evaluado el recurso junto a los documentos anejados, surge que el 23 de marzo de 2013, el señor Héctor Manuel Fernández Soto y la señora Neida Priscila Borges Rivera, suscribieron una *Primera Hipoteca* (*Conversión del Capital Acumulado en la Vivienda*), con el acreedor hipotecario en ese momento, VIG Mortgage Corp., la cual garantizaba un préstamo de una hipoteca revertida. En la escritura, específicamente en el acápite intitulado Convenios Uniformes, la sección número 9 (Fundamentos para Acelerar la Deuda) se dispone lo siguiente:

(a) **Vencida y Pagadera.** El Deudor acuerda que el Acreedor Hipotecario podrá requerir el pago total inmediato de todas las sumas garantizadas por esta Hipoteca si:

1. **Un Deudor muere y la Propiedad no es la residencia principal de al menos un Deudor sobreviviente.**

2. Todo el título de la Propiedad del Deudor (o su interés beneficiario en un fideicomiso por la totalidad o parte de la Propiedad) se vende o de otro modo se transfiere y ningún otro Deudor retiene (a) título de la Propiedad en pleno dominio, (b) un arrendamiento por no menos de noventa y nueve (99) años que sea renovable o un arrendamiento que tenga un periodo restante de no menos de cincuenta (50) años más allá de la fecha del cien avo

(100) cumpleaños del Deudor mas joven, o (c) un usufructo vitalicio en la Propiedad, (o retiene un interés beneficiario en un fideicomiso con tal interés en la Propiedad).

(b) **Vencida y Pagadera con la Aprobación del Secretario**. El Deudor acuerda que el Acreedor Hipotecario podrá requerir el pago total inmediato de todas las sumas garantizadas por esta Hipoteca, con la aprobación por parte de un representante autorizado del Secretario, si:

1. La Propiedad deja de ser la residencia principal de un Deudor por razones que no sean la muerte y la Propiedad no es la residencia principal de al menos otro Deudor; o

2. Por un periodo de mas de doce (12) meses consecutivos, un Deudor no ocupa físicamente la Propiedad debido a una enfermedad física o mental y la Propiedad no es la residencia principal de al menos otro Deudor; o

3. **No se realiza una obligación del Deudor bajo esta Hipoteca**.

(c) **Notificación al Acreedor Hipotecario**. El deudor notificará al Acreedor Hipotecario siempre que ocurra cualquiera de los acontecimientos mencionados en el Párrafo 9(a)(ii) y (b).

(d) **Notificación al Secretario y al Deudor**. **El Deudor acuerda que el Acreedor Hipotecario notificará al Secretario y al Deudor siempre que el préstamo venza y se vuelva pagadero bajo el Párrafo (9)(a)(ii) y (b). De conformidad con los términos y condiciones del Contrato de Préstamo, el Acreedor Hipotecario no tendrá derecho a comenzar la expropiación hasta que el Deudor haya tenido treinta (30) dias luego de la notificación para**:

1. Corregir el asunto que ocasionó que la Hipoteca venciera y se volviera pagadera; o

2. Pagar el balance total; o

3. Vender la Propiedad por el balance o el noventa y cinco por ciento (95%) del valor tasado – el que sea menor – y aplicar el producto neto de la venta al balance; o

4. Proporcionar al Acreedor Hipotecario una escritura en lugar de la expropiación.

(Énfasis nuestro).

Uno de los principales argumentos de Ana Paula, es que el acreedor hipotecario, en ese momento Reverse Mortgage Funding en

sustitución del acreedor original, no cumplió con evidenciar que contaba con la aprobación del Secretario[7], según dispuesto en la escritura de hipoteca, previo a declarar que la deuda del préstamo de la hipoteca revertida estaba líquida y exigible. Le asiste la razón. Veamos.

Del expediente se desprende que, el 1 de octubre de 2019, Reverse Mortgage Funding envió una *Notificación de Pago de Hipoteca Adeudada* por medio de una carta dirigida al señor Héctor Manuel Fernández Soto. En esta le informaron que "[l]a hipoteca revertida por la cantidad de $190,476.67 según calculada al final del mes actual, se encuentra técnicamente en demora debido al no pago de las contribuciones y/o el seguro sobre la residencia principal". Le advirtieron que, si la deuda no se pagaba en su totalidad o si la propiedad no se vendía en un término de 30 días desde la fecha de la comunicación, entonces procederían con el trámite correspondiente para la ejecución de la hipoteca.[8]

De la notificación antes mencionada, la cual fue dirigida al señor Fernández Soto solamente, no surge disposición alguna que establezca que Reverse Mortgage Funding haya incluido la autorización del Secretario para poder adelantar el cobro de la hipoteca revertida, como lo requería la escritura suscrita entre las partes. De igual manera, del expediente tampoco surge documentación alguna dirigida a establecer y/o demostrar la aprobación necesaria que se requería para dirigir la carta al señor Héctor Manuel Fernández Soto, por el incumplimiento de los pagos de las contribuciones y del seguro. Resulta evidente que previo a comenzar una acción legal en contra de los deudores, el acreedor

---

[7] Secretario del Departamento de la Vivienda y Desarrollo Urbano.

[8] La escritura de hipoteca antes mencionada dispone que se le debe conceder al deudor hipotecario un término de 30 días para subsanar cualquier violación a los término y condiciones del préstamo parte de la hipoteca revertida. En cuanto a esta disposición, no hay duda de que Reverse Mortgage Funding cumplió con ello, mediante la carta suscrita el 1 de octubre de 2019.

tiene que poseer evidencia demostrativa de que el HUD autorizó declarar la obligación liquida y exigible.

Así pues, a tenor con la normativa atinente discutida, es evidente que el foro primario cometió el error señalado por Ana Paula. Por lo tanto, procede que revoquemos la *Sentencia* del 8 de septiembre de 2023, emitida por el TPI en la cual se dispone de la propiedad objeto de controversia y en la que se declara Ha Lugar la demanda presentada por Reverse Mortgage Funding, ahora Longbridge Financial. Además, se revoca la *Orden de Ejecución* con fecha del 24 de junio de 2024, y el *Mandamiento de Ejecución de Sentencia* con fecha del 27 de junio de 2024. Ello, toda vez que debido a la inobservancia contractual por parte de Reverse Mortgage de poseer la autorización del Secretario para adelantar el cobro de la hipoteca revertida, la acción que se llevó a cabo judicialmente no se realizó conforme a derecho, convirtiendo la sentencia emitida nula, que no surte efecto jurídico alguno.

La conclusión a la que hoy arribamos torna innecesaria la discusión de los demás señalamientos de error.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *Certiorari* y se revoca la *Orden de Ejecución* del 24 de junio de 2024, así como el *Mandamiento de Ejecución de Sentencia* del 27 de junio de 2024.

Por consiguiente, se desestima la *Demanda* de epígrafe.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones